# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAUN GUESS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 18-2948** |
| **v.** | : | |
| | : | |
| **PHILADELPHIA HOUSING** | : | |
| **AUTHORITY,** | : | |
| **Defendant.** | : | |

**MCHUGH, J.**                                                                                    **January 24, 2019**
### MEMORANDUM

This case involves a claim of sex discrimination under Title VII and raises pressing questions about the scope of that statute.  The Third Circuit has held that sexual orientation does not form the basis for a claim of sex discrimination under Title VII.  Plaintiff invites me to hold otherwise, effectively contravening that precedent.  Despite the powerful appeal of Plaintiff's arguments, it is not my place to "overrule" a higher court.  Accordingly, although I reject Defendant's argument that Plaintiff failed to exhaust administrative remedies, the controlling law in this circuit does not allow his hostile work environment claim, which is based solely on sexual orientation discrimination.  I must dismiss Count I and Count II, to the extent that it is based on sexual orientation discrimination, though such dismissal is without prejudice.

## I.    Factual Background

Plaintiff Shaun Guess worked as an employee of Defendant, the Philadelphia Housing Authority, until August 31, 2017.  Plaintiff served as a Family Self Sufficiency (FSS) Coordinator beginning in November 2014, and he alleges that he was compensated less per year

than three similarly situated female FSS Coordinators.  Plaintiff made inquiries with supervisors about the reason for the pay disparity, but his concerns went unaddressed.

Throughout his employment with Defendant, Plaintiff claims that he was "routinely assigned to lift boxes, carry water jugs, pick up bookbags, or perform more manual, labor-intensive tasks, instead of the female employees."  Pl.'s First Am. Compl. 4, ECF No. 14.  In vernacular terms, Plaintiff was asked to perform stereotypically male tasks.  In one such instance, on July 26, 2017, a supervisor told Plaintiff to pick up heavy bookbags.  When Plaintiff objected, the supervisor called Plaintiff a "fucking faggot" (hereinafter "f---ing f-----").  *Id.* at 5.  Plaintiff is not in fact homosexual.

That same day, Plaintiff approached the Director and Executive Vice President, Mr. Myles, about the incident.  Myles purportedly asked Plaintiff whether he really wanted to file a complaint and told him to be sure that was what he wanted to do.  The following day, Plaintiff wrote a memo regarding the incident, which he sent to Myles.  Plaintiff met with Human Resources personnel on August 27, 2017, and they informed him that, while his complaint may establish a violation of Defendant's General Regulations of Behavior, it did not establish an EEO violation.  On September 8, 2017, after Plaintiff had terminated his employment with Defendant, he received a formal letter confirming this assessment.

Mr. Guess received text messages from the supervisor who called him a f---ing f----- twice after he reported the incident.  On August 2, 2017, she sent a message suggesting that Plaintiff could have talked to her personally about the incident and warning him to watch who he spoke to.  On September 6, 2017, she expressed shock at his handling of the situation.  The message stated in part, "[a]ll of this over something you started . . . yeah I slipped and said you were acting a certain way and I apologized for it but for you to go this far!"  *Id.* at 6.  She also

threatened to reveal untrue information about Plaintiff and stated, "[y]ou're not even gay to be that hurt that I said your [*sic*] acting that way . . . I'm beyond hurt!"  *Id.* at 7.

On or around his last day of employment with Defendant, August 31, 2017, another female coworker approached Plaintiff and stated, in reference to the incident on July 26, 2017, "I don't know if you are or you aren't."  *Id.* at 6.  The same female coworker had, previously in 2017, said, "[g]irl, please" and "[g]irl" to Plaintiff.  *Id.* at 4.  He asked her not to call him a girl, and that incident also led to the involvement of Human Resources.  Plaintiff ultimately resigned.

On February 26, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Def.'s Mot. Dismiss, Ex. B, ECF No. 16. Plaintiff marked "sex" as the form of discrimination and noted the latest date of discrimination as July 27, 2017.  *Id.*  The section containing "the particulars" stated:

> Mr. Guess was hired by the Philadelphia Housing Authority (PHA) on or about June 19, 2014.  During Mr. Guess' employment with PHA he transitioned to a FSS Coordinator. Mr. Guess was compensated significantly less than similarly situated female FSS Coordinators.  Also, Mr. Guess was routinely assigned to more manual labor and tasks, despite other female FSS Coordinators being ready, willing and available for those same labor intensive and less desirable tasks.  (disparate treatment-sex/gender (a) pay and (b) job assignments).  On July 27, 2017, a PHA manager called Mr. Guess a "fucking faggot" in front of his co-workers.  PHA's treatment of Mr. Guess was severe and discriminatory, on August 31, 2017, Mr. Guess terminated his employment with PHA.
>
> Accordingly, Complainant suffered discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act.

*Id.*  Plaintiff received a Notice of Right-to-Sue from the EEOC and timely instituted this civil action.  Defendant now moves to dismiss Count I of Plaintiff's First Amended Complaint in its entirety for failure to exhaust administrative remedies or for failure to state a claim and Count II, to the extent that it alleges discrimination based on perceived sexual orientation, for failure to state a claim.  I address these arguments in turn.

## II.    12(b)(1) Failure to Exhaust

Defendant first argues that Count I should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff failed to properly exhaust his administrative remedies.  I disagree.

Rule 12(b)(1), as amplified by *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991), provides the standard for Defendant's facial jurisdictional challenge. *See Gould Elec., Inc. v. United States*, 220 F.3d 169, 176, 178 (3d Cir. 2000).  Under the well-established rule of *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), I will consider both the complaint and the EEOC charge.

Before bringing a civil action under Title VII, a plaintiff must have filed a charge of discrimination with the EEOC.  *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 963 (3d Cir. 1978). This requirement serves to give notice to the party charged with violating Title VII and to provide an opportunity for resolution short of litigation.  *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977).  The initial charge filed with the EEOC then determines the parameters of subsequent civil litigation.  "Once a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'"  *Hicks*, 572 F.2d at 966 (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)).  The Third Circuit has noted, however, that this jurisdictional requirement should be construed liberally.  *Glus*, 562 F.2d at 887-88; *EEOC v. Kronos Inc.*, 620 F.3d 287, 300 (3d Cir. 2010).

Defendant contends that the allegations in Plaintiff's First Amended Complaint do not fall within the scope of the EEOC investigation that could have been expected to grow from the

charge Plaintiff filed with the agency. Specifically, Defendant argues that Plaintiff's charge did

not provide sufficient notice of allegations concerning sexual orientation discrimination or of any

hostile work environment claim. I find no such defects in the charge.

The allegations related to sexual orientation discrimination are well within the scope of

the charge. The Plaintiff recounted an incident in which a supervisor directed a homophobic slur

at him. Such facts would put any reasonable defendant on notice of claims involving sexual

orientation, perceived or otherwise. Such allegations certainly fall within the "scope of the

EEOC investigation which can reasonably be expected to grow out of the charge." *Hicks*, 572

F.2d at 966. This is particularly true because the EEOC recognizes sexual orientation

discrimination as a form of sex discrimination under Title VII, *see Baldwin v. Foxx*, EEOC

Appeal No. 0120133080, 2015 WL 4397641, at *5 (EEOC July 15, 2015), and has previously

investigated and litigated sex discrimination claims based on sexual orientation discrimination.

*See EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d 834, 836 (W.D. Pa. 2016). None of

the allegations in Plaintiff's First Amended Complaint are beyond the scope of an EEOC

investigation based on Plaintiff's charge.

With respect to the hostile work environment claim, the charge again sufficiently

supported Plaintiff's allegations. Plaintiff's failure to mark the space for "continuing action"

when he completed the form in February 2018 does not prevent the claim.[1] The failure to check

a particular box on a charge form does not alone preclude the assertion of a claim, *see Hicks*, 572

F.2d at 966-67; *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 645 (E.D. Pa. 2011),

and a hostile work environment claim does not necessarily require a "continuing action" because

---

[1] Reviewing Plaintiff's EEOC charge form, it seems entirely possible that he did not check "continuing action" because, when he completed the form on February 26, 2018, he had already terminated his employment with Defendant, and the discrimination was, therefore, no longer "continuing." Suffice it to say that the form is not a model of clarity.

such allegations may be based on severe *or* pervasive conduct.  *See Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017).  Plaintiff here alleged facts about his work environment beyond those related to compensation discrimination, including routine—i.e. regular or continuing—sex discrimination in job assignments and an incident in which a supervisor called him a homophobic slur.  The charge indicated that Plaintiff experienced "severe and discriminatory" treatment based on his sex in violation of Title VII.  This sufficiently put the Housing Authority on notice that Plaintiff was alleging severe or pervasive discrimination because of sex, as required for a hostile work environment claim.  *See id.*  Plaintiff has exhausted his administrative remedies, and I will not dismiss Count I on these grounds.

### III.     12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6), as augmented by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), provides the standard for Defendant's remaining objections.

#### a.   *Count I Hostile Work Environment/Harassment*

Defendant next challenges Count I under Rule 12(b)(6) for failure to state a claim upon which relief can be granted under Title VII.  A hostile work environment claim requires a plaintiff to "establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Moody*, 870 F.3d at 213 (3d Cir. 2017) (emphasis omitted) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167

(3d Cir. 2013)).  The first prong, establishing discrimination "because of" sex or gender,[2]

presents the sole foundation for Defendant's objections.  The Housing Authority contends that

Plaintiff's hostile work environment claim under Title VII fails because he alleges only

discrimination on the basis of sexual orientation, which cannot constitute discrimination

"because of sex" for purposes of Title VII as a matter of law.  Because the Third Circuit has

explicitly endorsed that view and for the reasons that follow, I must agree with Defendant that

Plaintiff's First Amended Complaint has failed to state a viable hostile work environment claim.

     The Third Circuit has held that discrimination because of sexual orientation is not

discrimination because of sex for Title VII purposes.  *Bibby v. Phila. Coca Cola Bottling Co.*,

260 F.3d 257, 261 (3d Cir. 2001).  I am not empowered to overrule that decision, although

Plaintiff's arguments urging me to do so certainly warrant discussion, which I have reserved for

the end of this opinion.  Plaintiff has expressly alleged in Count I a claim of "Hostile Work

Environment/Harassment *Based on Perceived Sexual Orientation*," and the First Amended

Complaint does not identify an alternate basis for the hostile work environment sex

discrimination claim.  Pl.'s First Am. Compl. 3, ECF No. 14 (emphasis added).  I must,

therefore, grant the Motion to Dismiss Count I.

     Plaintiff opposes dismissal on the ground that he has set forth a claim for gender

stereotyping.  He is correct as to the controlling law, but that is not how the complaint is

formulated.  As to the law, although the Third Circuit does not view Title VII sex discrimination

as encompassing discrimination on the basis of sexual orientation, it does recognize gender

stereotyping claims as a form of discrimination because of sex.  *See Bibby*, 260 F.3d at 262-63;

---

[2] Although I recognize that "sex" and "gender" are distinct terms, and that in some instances that distinction might have substantive import, most of the precedent concerning Title VII uses the two terms interchangeably. For purposes of this case and this Memorandum, I will do the same.

*Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 290 (3d Cir. 2009). Pleading such a claim is

straightforward: "All plaintiff need allege to survive a motion to dismiss is a 'refusal to conform

to a gender stereotype' and an allegation that this led to discrimination." *Barrett v. Pa. Steel Co.,*

*Inc.*, 2014 WL 3572888, at *3 (E.D. Pa. July 21, 2014) (quoting *Rachuna v. Best Fitness Corp.*,

2014 WL 1784446, at *6-7 (W.D. Pa. May 5, 2014)). When pled as claims of a hostile work

environment based on sex, allegations similar to Plaintiff's have survived motions to dismiss on

the basis of gender stereotyping. *See Frank "Doe" v. WM Operating, LLC*, 2017 WL 3390195,

at *3 (E.D. Pa. Aug. 7, 2017) (O'Neill, J.) (denying motion to dismiss claim for hostile work

environment based on sex because, although plaintiff did not specifically allege that he acted

effeminately, the court concluded that plaintiff's supervisor viewed him as effeminate and not

conforming to expectations of masculinity from the fact that his supervisor spoke to him in a

high-pitched, feminine voice and called him by a female name); *Ellingsworth v. Hartford Fire*

*Ins. Co.*, 247 F. Supp. 3d 546, 553-54 (E.D. Pa. 2017) (Stengel, J.) (denying motion to dismiss

claim for hostile work environment based on sex where heterosexual plaintiff suffered

harassment, including being called homophobic names, because her supervisor saw her

appearance, specifically her tattoo and manner of dress, as too masculine and perceived her to be

homosexual).[3]

As to the adequacy of the present Amended Complaint, Plaintiff's only arguments in

support of a gender stereotyping claim appear in his Response. There, he contends in a footnote

that Count I could be relabeled "Sex Discrimination" and supported by the same facts. Pl.'s

---

[3] *Ellingsworth* further supports the viability of a gender stereotyping claim in cases where a heterosexual plaintiff is
perceived as homosexual. There, Judge Stengel noted that the plaintiff's heterosexuality indicated that her
supervisor "harbored such a strong prejudice and animus as to how women should look, dress, and act, that [her
supervisor] actually mischaracterized another person's sexual orientation." *Id.* at 554. He concluded that,
"[c]learly, [the supervisor's] animus and pre-conceived gender stereotyping played a role in her treatment" of the
plaintiff. *Id.*

Resp. 18 n.1, ECF No. 17. But it is well settled that a plaintiff may not amend a complaint through a response to a motion to dismiss. *Commonwealth ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff further argues that he has pled a gender stereotyping claim but does not articulate with any clarity how, pointing only to one paragraph that implies his supervisor's actions were motivated by him "acting a certain way." Pl.'s Resp. 21, ECF No. 17; Pl.'s First Am. Compl. 6, ¶ 11(n), ECF No. 14 (quoting supervisor's text message in which she wrote, "I slipped and said you were acting a certain way" in reference to the f---ing f----- incident). Plaintiff has framed his hostile work environment claim exclusively as discrimination on the basis of perceived sexual orientation. As discussed above, such a claim is not currently recognized within the Third Circuit. Therefore, I must grant the Motion to Dismiss Count I, although I do so without prejudice to Plaintiff's right to again amend the complaint.

> b. *Count II Compensation Discrimination*

Likewise, Plaintiff cannot sustain the Title VII compensation discrimination claim in Count II to the extent it is based upon sexual orientation. *See Bibby*, 260 F.3d at 261. Plaintiff has adequately pled that he was discriminated against on the basis of being male, a claim that Defendant has not moved to dismiss. But to the extent that he separately alleges compensation discrimination based on perceived sexual orientation, I must grant the Motion to Dismiss, again without prejudice.

## IV. Sexual Orientation Discrimination as Discrimination "Because of Sex"

Plaintiff devotes the vast majority of his briefing to arguing that sexual orientation discrimination is necessarily a form of sex discrimination, contrary to the holding in *Bibby*. He

requests that I reach that conclusion, following the lead of courts in other circuits and one court in the Western District. Although I am obligated to decline Plaintiff's invitation, because of the importance of this issue, Plaintiff's arguments warrant discussion.

###### a. *Gender Stereotyping and Sexual Orientation Discrimination*

The argument that sexual orientation discrimination is necessarily a form of gender stereotyping discrimination merits serious consideration. The Third Circuit has explicitly recognized gender stereotyping claims as claims of sex discrimination. *Prowel*, 579 F.3d at 290 (quoting *Bibby*, 260 F.3d at 264) ("[E]mployees may . . . raise a Title VII *gender stereotyping* claim, provided they can demonstrate that 'the[ir] harasser was acting to punish [their] noncompliance with gender stereotypes.'") It has further acknowledged that such claims are available to all employees, regardless of sexual orientation. *Id.* at 291-92 ("There is no basis in the statutory or case law to support the notion that an effeminate *heterosexual* man can bring a gender stereotyping claim while an effeminate *homosexual* man may not."). Stated differently, "discrimination against gays and lesbians is prohibited under Title VII insofar as it involves discrimination based on sex and gender stereotypes." *Mateo v. Nestle Waters N. Am., Inc.*, 2018 WL 1806049, at *16 (D.N.J. Apr. 16, 2018) (citing *Prowel*, 579 F.3d 285). Accordingly, the Third Circuit has acknowledged that "the line between sexual orientation discrimination and discrimination 'because of sex' can be difficult to draw." *Prowel*, 579 F.3d at 291.

District courts applying *Bibby* and *Prowel* have had to deal with that difficulty. Because "some of the complained of conduct [may fit] within both rubrics," the line between sexual orientation discrimination claims and gender stereotyping claims involving sexual orientation may seem arbitrary. *See Stewart v. Keystone Real Estate Grp. LP*, 2015 WL 1471320, at *3 (M.D. Pa. Mar. 31, 2015) (quoting *Kay v. Indep. Blue Cross*, 142 F. App'x 48, 51 (3d Cir. 2005)

(Rendell, J., concurring)).  Tasked with drawing such a line, many district courts have found gender stereotyping claims even where the facts of the discrimination directly related to perceived or actual sexual orientation.  *See Ellingsworth*, 247 F. Supp. 3d at 554 (finding a viable gender stereotyping claim where plaintiff's supervisor directed homophobic slurs at her and inaccurately perceived her to be a lesbian); *Frank "Doe" v. WM Operating, LLC*, 2017 WL 3390195, at *3 (E.D. Pa. Aug. 7, 2017) (finding a viable gender stereotyping claim where homosexual plaintiff's supervisor called plaintiff a female name and spoke to him in a feminine voice); *Burnett v. Union R.R. Co.*, 2017 WL 2731284, at *4 (W.D. Pa. June 26, 2017) (finding a viable gender stereotyping claim where plaintiff, who was rumored to be gay, was subjected to homophobic slurs and harassment because he was perceived as "homosexual or weak" rather than a "normal, hyper-masculine, heterosexual male"); *Barrett v. Pa. Steel Co.*, 2014 WL 3572888, at *3 (E.D. Pa. July 21, 2014) (finding a viable gender stereotyping claim where plaintiff was called feminine names, referred to as "gay," and subjected to sexually explicit jokes due to refusal to engage in cursing and crude banter).  *But see Coleman v. Caritas*, 2017 WL 2423794, at *4 (E.D. Pa. June 2, 2017) (relying on *Bibby* to find no viable gender stereotyping claim because homophobic slurs and statements that plaintiff's "hair looks gay" indicated discrimination was based on sexual orientation rather than perceived effeminacy); *Stewart v. Keystone Real Estate Grp. LP*, 2015 WL 1471320, at *4 (M.D. Pa. Mar. 31, 2015) (relying on *Bibby* to find no viable gender stereotyping claim although ample facts demonstrated sexual orientation discrimination and sexual harassment).

　　　　This line of district court cases suggests that facts involving discrimination based on sexual orientation, perceived or otherwise, quite often support claims of gender stereotyping discrimination.  This leads me to question whether there is any meaningful difference between

sexual orientation discrimination and gender stereotyping discrimination. Any assumption about another person's sexuality, correct or not, necessarily seems to rely on assumptions or stereotypes about how members of that person's gender typically conduct themselves. *See Ellingsworth*, 247 F. Supp. 3d at 554; Brian Soucek, *Perceived Homosexuals: Looking Gay Enough for Title VII*, 63 Am. U. L. Rev. 715, 766 (2014) ("Beliefs about homosexuality themselves often, if not always, turn on gender stereotypes."). Some may protest that sexual orientation discrimination centers on assumptions about people of a particular sexual orientation, rather than members of one gender. *See Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 370 (7th Cir. 2017) (Sykes, J., dissenting). But the stereotypes generally associated with being gay differ along *gender* lines. *See* Soucek, *supra*, at 717 (referring to the homosexual stereotypes of being "flamboyant (if male) or butch (if female)"); *see also Baldwin v. Foxx*, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *5 (EEOC July 15, 2015) (discussing the use of "lesbian" to refer to homosexual women and "gay" to refer to homosexual men). The inverse stereotypes associated with being heterosexual differ along the same lines—mirroring the gender stereotypes of "masculine" men and "feminine" women. Thus, gender stereotypes appear to lie at the heart of sexual orientation discrimination cases.

I am at a loss to conceive of a sexual orientation discrimination claim that could occur in so much of a vacuum as to be free of any gender stereotyping. Even in a hypothetical case of sexual orientation discrimination absent any typical masculine or feminine stereotyping, there remains the assumption that men should only engage in relationships with women and vice versa. *See* Soucek, *supra*, at 725-26 ("The gender stereotyping spectrum described in *Price Waterhouse* seems to include the gender stereotype that, as one district court put it, 'real men should date women, and not other men.'") (quoting *Centola v. Potter*, 183 F. Supp. 2d 403, 410

(D. Mass. 2002)).  As one of my colleagues in the Western District recently concluded, "[t]here

is no more obvious form of sex stereotyping than making a determination that a person should

conform to heterosexuality."  *EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d 834, 841

(W.D. Pa. 2016).  I am inclined to agree.

 *Bibby*'s 2001 holding is therefore the principal reason that district courts persist in

making the arbitrary distinction that separates sexual orientation claims from gender stereotyping

claims.  Except for Plaintiff's choice to plead his claim explicitly as sexual orientation

discrimination, he may well have found himself on the other side of *Bibby*'s line.  This

continuing phenomenon suggests that perhaps the time has come to reexamine *Bibby*.

  b.  *Third Circuit Reasoning in Bibby*

 Plaintiff rightly questions the foundations upon which *Bibby* rests.  The primary reason

for the Court's conclusion in *Bibby* was Congress's rejection of legislation that would have

expressly included sexual orientation in Title VII's protection.  *Bibby*, 260 F.3d at 261.  The

Third Circuit has since noted that such subsequent legislative history is entitled to minimal

weight.  *In re Visteon Corp.*, 612 F.3d 210, 230 (3d Cir. 2010) ("Evidence of congressional

inaction is generally entitled to minimal weight in the interpretive process.").  This view is

consistent with that of the Supreme Court and other circuits.  *See Zarda v. Altitude Express, Inc.*,

883 F.3d 100, 130 (2d Cir. 2018) (discussing Supreme Court cases criticizing subsequent

legislative history).  With respect to Title VII, I find evidence of congressional inaction

particularly unpersuasive because the understanding of "sex" has otherwise consistently

expanded through case law without explicit legislative action.  The Supreme Court has

interpreted "sex" discrimination under Title VII to encompass gender stereotyping, sexual

harassment that creates a hostile work environment, and sexual harassment between individuals

of the same sex. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989) (plurality opinion);

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986); *Oncale v. Sundowner Offshore*

*Servs., Inc.*, 523 U.S. 75, 79-80 (1998). In none of these cases did the broadened interpretation

of the plain statutory text depend on express congressional clarification.

    At least two of the three circuits from which the Third Circuit cited cases in *Bibby* have

since expanded their understanding of Title VII sex discrimination.[4]  The Second Circuit

explicitly overruled the first pillar supporting *Bibby*, *Simonton v. Runyon*, 232 F.3d 33 (2d Cir.

2000), concluding that sexual orientation discrimination is necessarily a form of sex

discrimination. *Zarda*, 883 F.3d at 108. The First Circuit, in the context of a hostile work

environment "sex-plus" claim, recently held that the second foundation for *Bibby*, *Higgins v.*

*New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999), does not preclude claims in

which, "in addition to the sex-based charge, the 'plus' factor is the plaintiff's status as a gay or

lesbian individual." *Franchina v. City of Providence*, 881 F.3d 32, 54 (1st Cir. 2018). The court

in *Franchina* further acknowledged that "the tide may be turning when it comes to Title VII's

protections" but declined to revisit the holding in *Higgins* because the question of sexual

orientation discrimination as a form of sex discrimination was not before them. *Id.* at 54 n.19.

These developments alone do not invalidate *Bibby*, but the judicial consensus behind it has

eroded.

    c.  *Arguments Absent in Bibby*

---

[4] The third case cited is *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69 (8th Cir. 1989). The holding of that case, that Title VII does not prohibit sexual orientation discrimination, remains good law at the time of this decision. The Eighth Circuit has only discussed the *Williamson* decision in *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862, 864 n.3 (8th Cir. 1999), to observe that *Williamson* was decided prior to *Oncale*. In *Schmedding*, the Eighth Circuit found that references in the complaint to the plaintiff's "perceived sexual preference" did not preclude a hostile work environment sexual harassment claim. *Id.* at 865. The Eighth Circuit may address the status of *Williamson* more directly in an upcoming case, as an appeal is currently pending from the decision in *Mark Horton v. Midwest Geriatric Mgmt., LLC*, 2017 WL 6536576 (E.D. Mo. Dec. 21, 2017).

It is not clear whether the Court of Appeals in *Bibby* considered the possibility that sexual orientation discrimination is a subset of sex discrimination. *EEOC v. Scott Med. Health Ctr, P.C.*, 217 F. Supp. 3d at 841. In the intervening years, our understanding of the complexity of human sexuality has advanced. This had led the EEOC—the agency tasked with interpreting and enforcing the statute—to interpret "sex" under Title VII to include sexual orientation and to advance that view in litigation. *Baldwin*, 2015 WL 4397641, at *5; *EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d at 839. In *Baldwin*, the EEOC concluded that "sexual orientation is inherently a 'sex-based consideration,'" and therefore "an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." 2015 WL 4397641, at *5.

In support of this conclusion, the EEOC identified three primary arguments, which the Second and Seventh Circuits recently adopted and which Plaintiff advances in this case. One is the contention, discussed above, that there is no meaningful difference between gender stereotyping and sexual orientation discrimination. *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 119-22 (2d Cir. 2018); *Hively v. Ivy Tech Cmty. Coll.*, 853 F.3d 339, 346 (7th Cir. 2017); *Baldwin*, 2015 WL 4397641, at *7-8. The second argument is that, employing either a "but-for" standard or comparative analysis, sexual orientation discrimination is necessarily a form of sex discrimination. *Zarda*, 883 F.3d at 116; *Hively*, 853 F.3d at 345-46; *Baldwin*, 2015 WL 4397641, at *5-6. That is, if a male employee suffers discrimination because he is attracted to, or perceived to be attracted to, men, while a woman attracted to men does not experience that same treatment, then he has experienced sex discrimination as a matter of simple logic. *See id.* The third argument the EEOC advances centers on associational discrimination. *Baldwin*, 2015 WL 4397641, at *6-7. Under this analysis—mirroring the analysis often used in the race

discrimination context—discrimination due to a perceived or actual relationship with a person of a particular sex constitutes discrimination on the basis of one's own sex. [5]  *Id.*; *Zarda*, 883 F.3d at 124-28; *Hively*, 853 F.3d at 347-48.  That these arguments are persuasive to the EEOC, two circuit courts, and a number of federal district courts that Plaintiff cites, suggests they are worthy of the Third Circuit's consideration should it have the opportunity to revisit *Bibby*'s holding.

It will soon be two decades since the Third Circuit decided *Bibby*.  Social and scientific understanding of sexual orientation has evolved and the law with it.  In one of the cases on which the Housing Authority relies heavily, Judge Dubois concluded that *Bibby* compelled him to dismiss the plaintiff's claim, but he did so "with the recognition that 'the nature of injustice is that we may not always see it in our own times.'"  *Coleman v. Caritas*, 2017 WL 2423794, at *5 (E.D. Pa. June 2, 2017) (quoting *Obergefell v. Hodges*, 135 S.Ct. 2584, 2598 (2015)).  Although *Bibby* similarly compels me to dismiss Plaintiff's claims of sexual orientation discrimination, I question whether forcing litigants to replead essentially the same case under different labels is mere artifice.

/s/ Gerald Austin McHugh

_____
Gerald Austin McHugh
United States District Judge

---

[5] The Second Circuit relied heavily on this reasoning in *Zarda*, having previously held that "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race."  *Zarda*, 883 F.3d at 124 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008)).  The Third Circuit has not addressed the same precise question but has discussed associational sex discrimination arguments in a slightly different context.  *See Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 92 (3d Cir. 1999) (concluding that men have standing to sue under Title VII as indirect victims of sex discrimination).  In reaching its conclusion in *Anjelino*, the Third Circuit discussed the case law surrounding associational discrimination in the race context and noted the district court's conclusion, "reasoning by analogy from the Supreme Court's associational standing precedent in the context of race discrimination . . . that male employees may sue under Title VII if discrimination directed at women results in a loss of interpersonal contacts or associational rights with women."  *Id.* at 89-90.